IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEDRIC JAMAR DEAN, #197 053,    )
    )
    Plaintiff,    )
    )
v.    )    CIVIL ACTION NO. 1:16-CV-92-WKW
    )    [WO]
LT. MICHAEL BRYAN, *et al*.,    )
    )
    Defendants.    )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

Plaintiff Dedric Jamar Dean ["Dean"] brings this 42 U.S.C. § 1983 action against Chief Marlos Walker, Michael Chadwick, Michael Bryan, and Chris Juneau, officers with the Ozark Police Department, for actions associated with his arrest on November 9, 2015.  Dean complains Defendants subjected him to an unlawful arrest and search and seizure and to malicious prosecution. Dean further alleges Defendant Walker failed to adequately train and supervise his subordinate officers which resulted in their deliberate indifference to his constitutional rights. Dean seeks restoration of his "liberty" in the form of release from confinement, monetary damages and the federal criminal prosecution of the defendants.[1]  Doc. 14 at 2–7.

Defendants filed an answer, special report, supplemental special report, and supporting evidentiary materials addressing Dean's claims for relief. *See* Docs. 28, 65.  In their supplemental special report Defendants argue they are entitled to summary judgment on Dean's claims challenging his arrest in November of 2015 and his prosecution on the related criminal charges

---

[1] This case is before the court on the amended complaint filed by Dean on December 15, 2016. *See* Docs. 6, 13, 14.

because these claims are barred from review by this court under the doctrine set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994). Doc. 65 at 8–19. Defendants also argue that Dean's failure to train/supervisory liability claim against Defendant Walker and his request for criminal prosecution of Defendants provides no basis for relief in this action. *Id.* at 5–8, 21–23, 34–35. The court entered an order which provided Dean an opportunity to file a response to Defendants' special report. Doc. 30. This order advised Dean his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 19 at 2. This order further cautioned Dean that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special report[s] and any supporting evidentiary materials as a [dispositive] motion . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." Doc. 19 at 2. The court granted Dean an opportunity to respond to Defendants' supplemental report in accordance with the directives of the court's April 26, 2017, order. *See* Doc. 64. Dean filed no response to Defendants' supplement special report. Pursuant to the court's April 26, 2017, order, the court now treats Defendants' supplemental special report as a motion for summary judgement and finds summary judgment is due to be granted in favor of Defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam);

Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Dean to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a Dean's sworn amended complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ*., 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein*, 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 Fed. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Dean's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

### III. DISCUSSION

### A.    The Challenge to Plaintiff's Convictions

In the amended complaint, Dean alleges in a somewhat haphazard fashion that Defendants violated his constitutional rights by subjecting him to an unlawful arrest, an unreasonable search and seizure, and malicious prosecution. According to Dean, Defendants fabricated evidence, tampered with evidence, threatened and intimidated witnesses, and withheld exculpatory evidence. Dean also complains "police men" conducted an unconstitutional search of [his] personal property and filed criminal complaints against him without probable cause, and Defendant Juneau illegally seized a cell phone and searched it without a warrant. Dean further contends Defendant Walker failed to provide adequate training and supervision to the defendant law enforcement officials which caused the constitutional violations about which he complains. Finally, Dean requests federal charges be brought against Defendants.  Doc. 14.

Defendants' evidence includes an affidavit from Sgt. Chris Juneau.[2] Defendant Juneau's affidavit states:

---

[2] Defendant Juneau is a police officer with the Ozark Police Department. Doc. 28-34 at 2. During the month of November 2015, he held the rank of police sergeant assigned to the Wiregrass Violent Crime Drug Task Force. *Id.*

In the early morning hours of Sunday, November 8, 2015, I was notified of a shooting that reportedly occurred at 481 Newton Avenue in Ozark, Dale County, Alabama. I responded to 481 Newton Avenue and photographed the scene.

Later that day, Lt. Michael Bryan informed me that the shooting victim, Justin Lewis, identified the shooter as Jolly. I recognized "Jolly" as the street name of Dedric Jamar Dean, who is the plaintiff in this lawsuit. For several months, Dean had been under investigation by the Ozark Police Department for drug crimes. Based upon our research, I knew that Dean had a prior murder charge for which he had been acquitted, as well as numerous prior drug charges. I also knew that Dean's driver's license was revoked. Lt. Bryan and I began to search for Dean.

At 3:34 p. m. the following day—Monday, November 9, 2015—Lt. Bryan and I were searching for Dean in the area of Newton Avenue when we saw him driving a white Chevrolet Trailblazer. According to Lt. Bryan, Justin Lewis had reported that after the shooting, Dean left in a white Chevrolet Trailblazer that belonged to a woman named Ashleigh. I saw a woman in the Trailblazer's front passenger seat. There was a second woman in the back seat, although I did not see her at the time.

Lt. Bryan and I were riding together in my assigned police vehicle, an unmarked pickup truck. I was driving. Lt. Bryan and I attempted to make a traffic stop on Dean. The stop was based upon probable cause that Dean shot Justin Lewis the day before and on the fact that Dean was driving with a revoked license. When Lt. Bryan activated the blue emergency lights on my vehicle, Dean accelerated and fled. Dean led Lt. Bryan and I on a high speed chase through Ozark. . . .

. . .

After Dean crashed into [a] tree, Lt. Bryan and I took Dean and his two passengers into custody. I heard Dean tell Lt. Bryan that he fled because he knew that he was wanted for a shooting. Dean denied that he shot anyone.

The front seat passenger was Tamara Lutz. The back seat passenger was Ashleigh Byars. Byars was seated on the passenger side of the back seat. When Byars exited the Trailblazer, I saw a black sock with hearts imprinted on it fall from the Trailblazer's passenger compartment onto the ground. I left the sock in place at the time.

I obtained evidence bags from my truck. On the passenger side of the Trailblazer near the front door, I recovered a purple latex glove which contained a blue sock that contained a baggie that contained several bags of marijuana and meth that were packaged for street-level sale. I recognized the marijuana because I have been a drug investigator for ten years, have seen marijuana on hundreds of occasions, and recognized its appearance and smell. I recognized the meth because

I have also seen meth on hundreds of occasions. I have also attended numerous classes in which I was trained to recognize marijuana and meth. I believed these items were thrown from inside the vehicle because they were dry, even though it had been raining.

Next, I recovered the black sock with hearts imprinted on it that fell when Byars exited the Trailblazer. When I picked up that sock, I felt a bulge inside that was consistent with a smoking device. I removed the object and found a glass smoking device of the type used to smoke meth. Byars denied that the pipe belonged to her.

I recovered a glass smoking device of the type used to smoke meth on the driver's side floorboard of the Trailblazer. Agent Zenith Glenn actually located this device. Agent Glenn said he found it concealed under part of the center console alongside the driver's floor board.

I also recovered Dean's cell phone inside the Trailblazer.

Patrol officers transported Dean, Byars, and Lutz to the Ozark Police Department for interviews.

At the police station, Lutz provided a written statement in which she stated that Dean admitted to her that he shot Justin Lewis. I was present when Lutz wrote her statement. . . . .

. . .

I interviewed Byars about the drug offenses. Byars identified Dean as "Jolly." Byars denied knowledge or ownership of the drugs. . . .

Cpl. James Isler had Dean transferred to the Ozark Police Training Facility for his interview.

After the interviews and statements were obtained, Cpl. James Isler arrested Dean for Assault Second Degree. I arrested Dean for Possession of Marijuana First Degree, Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Attempting to Elude a Police Officer.

I did not search Dean's cell phone without a warrant. On November 18, 2015, I obtained a search warrant from Dale County Circuit Judge Kimberly Clark to search Dean's cell phone. Exhibit 7 is a true and correct copy of the search warrant and return. On November 20, 2015, I executed the search warrant. . . . I made the return on November 23, 2015.

Doc. 28-34 at 2–8.

In their supplemental special report, Defendants argue Dean's claims Fourth Amendment and malicious prosecution claims are barred from review by the rule espoused in *Heck* and its progeny because success on those claims would necessarily imply the invalidity of Dean's criminal convictions arising from claims challenging his alleged unlawful arrest and subsequent prosecution on drug offenses, an attempted assault offense, and an attempt to elude offense. Doc. 65 at 5–23. Specifically, Defendants state that on June 20, 2017, Dean entered a guilty plea in the Circuit Court for Dale County to the above-noted offenses pursuant to a plea bargain and that his § 1983 damages claims based on his convictions for those offenses is barred by *Heck*.[3]  *Id.* at 4–5; Doc. 65-4. Dean remains incarcerated on these convictions. Doc. 65-9.  Defendants assert that "[b]ecause Plaintiff 'voluntarily steer[ed] the action into <u>Heck</u> territory by making specific factual allegations in the complaint that [are] inconsistent with the facts upon which his criminal convictions were based,' <u>McCann v. Neilsen</u>, 466 F.3d 619, 621 (7th Cir. 2006)]," *Heck* bars his claims.  Doc. 65 at 14; *see Abello v. Rubino,* 63 F.3d 1063, 1064 (11th Cir. 1995); *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998).

In *Heck*, the Supreme Court held that claims challenging the legality of a prisoner's confinement are not cognizable in a 42 U.S.C. § 1983 action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must therefore be dismissed.  512 U.S. at 489.  The relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Id.* at 487; *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis

---

[3]Although Defendants argue that the *Younger* Abstention Doctrine, *Younger v. Harris,* 401 U.S. 37 (1971), bars Dean's request for liberty, Doc. 65 at 23–35, the court finds Dean's claims and requests for relief are properly analyzed under *Heck* and its progeny for the reasons explained in the Recommendation.

in original) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence."); *Balisok*, 520 U.S. at 648 (inmate's claims for declaratory relief, injunctive relief or monetary damages which "necessarily imply the invalidity of the punishment imposed, [are] not cognizable under § 1983."); *Miller v. Indiana Dept. of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996) (Under *Heck*, "[t]he [determinative] issue . . . is not the relief sought, but the ground of the challenge.").  The rule of *Heck* is therefore not limited to a request for damages but equally applies to an inmate's request for declaratory or injunctive relief.  Further, while Fourth Amendment illegal search or arrest claims sometimes can be brought without proof that the underlying conviction has been called into question, *Hughes v. Lott,* 350 F.3d 1157, 1160 (11th Cir. 2003), *Heck* precludes those claims that "if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Id.* at 1160 n.2.

A finding in favor of Dean regarding the purported constitutional violations would necessarily cast doubt on  his 2017 guilty pleas to offenses arising from the unconstitutional conduct alleged. Those convictions have not been reversed or otherwise invalidated. Where the factual basis of a plaintiff's § 1983 claim is irreconcilable with a conviction, then *Heck* bars the claim, even one under the Fourth Amendment. *See e.g., Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995) (finding "[t]he fact that a Fourth Amendment violation may not necessarily cause an illegal conviction does not lessen the requirement that a plaintiff show that a conviction was invalid as an element of constitutional injury."); *Vickers v. Donahue*, 137 Fed. App'x. 285, 290 (11th Cir. 2005) (finding that Fourth Amendment § 1983 claim premised on officer providing false information in affidavit to secure an arrest warrant was barred by *Heck* because "the factual basis for [the plaintiff's] claim . . . inevitably undermine[s] his conviction."); *see also Weaver v. Geiger*,

294 Fed. App'x. 529, 533 (11th Cir.2008) (holding *Heck* precludes claims that "if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense.' ") (*citing Hughes*, 350 F.3d at 1160 n.2).

The law is well settled that "habeas corpus is the exclusive [federal] remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481; *Balisok*, 520 U.S. at 645 (The "sole remedy in federal court" for a prisoner challenging the constitutionality of incarceration on a sentence of a state court is a 28 U.S.C. § 2254 petition for writ of habeas corpus.). An inmate "cannot seek to accomplish by a section 1983 declaratory judgment what he must accomplish solely through a writ of habeas corpus." *Jones v. Watkins*, 945 F. Supp. 1143, 1151 (N.D. Ill. 1996); *Cook v. Baker, et al.*, 139 Fed. App'x 167, 169 (11th Cir. 2005) (The "exclusive remedy" for a state inmate's claim challenging the basis for or validity of his incarceration "is to file a habeas corpus petition pursuant to 28 U.S.C. § 2254[.]"). The Supreme Court emphasized "that a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Balisok*, 520 U.S. at 649; *Robinson v. Satz*, 260 Fed. App'x 209, 212 (11th Cir. 2007) ("[I]n *Wilkinson v. Dotson,* 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), the Supreme Court reviewed its prior holdings in this area and summarized that 'a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.' *Id.* at 81–82, 125 S.Ct. at 1248."). Where, as here, Dean argues his underlying 2017 convictions resulted from an unlawful arrest and illegally seized, tampered, fabricated, planted, and/or concealed evidence, he is "making

a collateral attack on his conviction[s], and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas statute[.]"  *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). "It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."  *Id.*, citing *Balisok*, 520 U.S. at 646–48.

Heck did "not engraft an exhaustion requirement upon § 1983, but rather den[ied] the existence of a cause of action.  Even a prisoner who has fully exhausted [all] available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."  512 U.S. at 489–90; *Abella*, 63 F.3d at 1066 n.4 ("*Heck* clarifies that *Preiser* is a rule of cognizability, not exhaustion.").  "This 'favorable termination' requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief — challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute."  *Nelson v. Campbell*, 541 U.S. 637, 646–47 (2004).[4]

Under the circumstances of this case, the rule of *Heck* bars Dean's use of any federal civil action, other than a 28 U.S.C. § 2254 petition for habeas corpus relief, to mount a collateral attack challenging matters associated with or stemming from his detention and arrest on November 9, 2015 or his prosecution on related charges. Consequently, these claims are not presently cognizable in this cause of action, and Defendants are due to be granted summary judgment.

---

[4]Plaintiff is advised that he must first properly and fully exhaust any available state court remedies prior to seeking federal habeas relief.

**B.      Failure to Train and Supervise**

Dean complains Chief Walker failed to properly train and supervise his deputies which resulted in the constitutional violations alleged. To the extent this claim  is not barred by *Heck* (*see* Doc. 65 at 19–20), it entitles Dean to no relief. Dean asserts no allegation that Chief Walker participated in any arrest or search but seeks to hold him accountable because he allegedly failed to properly train or monitor his officers. Doc. 14 at 7. However, "under § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.' " *Keith v. DeKalb Cnty, Georgia*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Thomas v. Poveda*, 518 Fed. App'x. 614, 618 (11th Cir. 2013), *citing Belcher v. City of Foley*, Ala., 30 F.3d 1390, 1397 (11th Cir.1994).

Dean must allege that Chief Walker had actual or constructive notice that a deficiency in his training caused his employees to violate Dean's constitutional rights. *Thomas,* 518 Fed. App'x at 618. Dean's contention that the conduct of Chief Walker's subordinates' regarding the allegations in his amended complaint is evidence that Chief Walker failed to properly train and supervise them is insufficient. To establish deliberate indifference, Dean must assert factual allegations which show that Chief Walker was "aware of the need to train or supervise [his] employees in a particular area." *American Federation of Labor and Congress of Industrial Organizations v. City of Miami, FL*, 637 F.3d 1178, 1189 (11th Cir. 2011). This is ordinarily demonstrated by evidence which reflects that supervisory personnel were aware of "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). An allegation of one violation does not sufficiently allege Chief Walker's liability. *Id.*; *Keith*, 749 F.3d at 1053.

Here, Dean merely alleges the ultimate conclusion that Chief Walker failed to properly train and supervise subordinate officers without showing that he knew of events that would have put him on notice of the need to further train or supervise his officers. Defendants are, therefore, entitled to summary judgment on Dean's failure to train and supervise claim.

## C.    Request for Criminal Prosecution of Defendants

Dean seeks criminal prosecution of the defendants for their actions outlined in the amended complaint.   Defendants argue Dean's request federal criminal charges be brought against Defendants Bryan, Juneau and Isler, Doc. 14 at 4, provides no basis for relief in this cause of action.  Doc. 65 at 34–35.

A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Nelson v. Skehan*, 386 Fed. App'x 783, 786 (10th Cir. 2010) (plaintiff has no constitutional right to have a defendant prosecuted); *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, *1 (6th Cir. 1999) (holding that "[t]he district court properly dismissed [Plaintiff's] complaint as frivolous . . . [because] contrary to [his] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted."); *Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C 2003) (holding that federal criminal statutes "do not convey a private right of action."); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997) (no private right of action exists under federal statute criminalizing conspiracies to deprive an individual of his constitutional rights); *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex 1997) (internal citations omitted) (finding that although "Title 18 U.S.C.   § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or

laws of the United States[,] [t]he statute does not create a private cause of action."). Thus, Defendants are entitled to summary judgment on this claim.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motion for summary judgment (Doc. 65) be GRANTED.

2.      Plaintiff's challenges to the constitutionality of his convictions and sentences imposed upon him by the Circuit Court for Dale County, Alabama, on June 20, 2017, be DISMISSED without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as they are not properly before the court at this time;

3.       Plaintiff's failure to train and supervise claim against Defendant Walker  be DISMISSED with prejudice;

4.      Plaintiff's claim for criminal prosecution of Defendants be DISMISSED with prejudice.

5.      Costs be taxed against Plaintiff.

6.      Judgment be entered in favor of Defendants.

It is further

ORDERED that **on or before January 29, 2019**, the parties may file objections to the Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and

waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 15th day of January 2019.


    /s/   Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE